require the consideration of facts not contained in the papers on appeal.

It is sufficient for the purposes of this appeal that Mrs. Spaeth might be in a position to assert a claim which it would require litigation to determine, and which cannot be definitely determined in this proceeding, to which she is not a party. "A purchaser on a partition or foreclosure sale has a right to expect that he will acquire a good title, and the law presumes that he bids with that object in view. He should not be left, upon receiving a deed, to the uncertainty of a doubtful title, or the hazard of a contest with other parties, which may seriously affect the value of the property if he desires to sell the same." Jordan v. Poillon, 77 N. Y. 518. See, also, Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Crouter v. Crouter, 133 N. Y. 55, 30 N. E. 726; Wanser v. De Nyse, 188 N. Y. 378, 80 N. E. 1088, 117 Am. St. Rep. 871. What was said in Koechl v. Gate Development Co., 149 App. Div. 239, 133 N. Y. Supp. 763, affirmed 205 N. Y. 591, 98 N. E. 1106, is applicable to the present case:

"While it is true that the affidavits submitted upon the motion do not conclusively show that there is any defect in the title, it is plain to be seen that there is an opportunity for a lawsuit, which appears to be threatened. * * * It is true that the facts do not appear positively; but there is clearly enough of the claim of the Greenwich Company to make it fairly certain that the title to the premises will be brought into question in some kind of an action, and it would be a hardship to the purchaser * * * to compel him to stand the expense and annoyance of a lawsuit."

We think that, under the rule established in the foregoing and many other cases, enough has been shown to entitle the purchaser to relief from his bid, with a return of the 10 per cent. and auctioneer's fees paid on the sale, with interest, and the reasonable charges incurred in the examination of the title. If the referee has not enough in his hands to meet these payments, the deficiency should be made up by the plaintiff. Raynor v. Selmes, 52 N. Y. 579; Builders' Mortgage Co. v. Berkowitz, 142 App. Div. 57, 126 N. Y. Supp. 464, affirmed 201 N. Y. 596, 95 N. E. 1124.

The orders appealed from will therefore be reversed, with $10 costs and disbursements on each appeal to the appellant, and the motion for relief from the bid will be granted, with $10 costs. All concur.

---

## In re LENT.

(Supreme Court, Appellate Division, First Department. November 8, 1912.)

ATTORNEY AND CLIENT (§ 44*)—DISBARMENT—GROUNDS.

An attorney, who in violation of his obligation to his client appropriates to his own use the proceeds of two checks for large amounts, which he has received from his client, an administratrix, to deposit with a surety company, will be disbarred.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

Charges by the Association of the Bar of the City of New York against Smith Lent, an attorney, for professional misconduct. Ordered disbarred.

See, also, 149 App. Div. 947, 134 N. Y. Supp. 1137.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Henry A. Stickney, of New York City, for petitioner.
Smith Lent, of Sing Sing, pro se.

INGRAHAM, P. J. The respondent, an attorney and counselor at law, is charged with professional misconduct in receiving two checks, the property of the estate of Thomas Stafford, of which the respondent's client Marie Stafford was administratrix, for deposit by him with the Fidelity Deposit Company, which was surety on her bond as administratrix, collecting the proceeds thereof, and converting the same to his own use. One of these checks was drawn to the order of Marie Stafford, administratrix of Thomas Stafford, and the other to the order of the estate of Thomas Stafford, and both were received by the respondent, acting as attorney for the administratrix as assets of the estate. The first check he presented to the administratrix and asked her to indorse it, stating that it was to be deposited with the surety company, and after she had indorsed it he took it with him; but, instead of making such deposit, he collected it and converted the proceeds to his own use. This check was dated August 28, 1909, and was for $1,000. The second check was also received by the respondent as attorney for the administratrix. He took it to her and asked her to indorse it, stating that he would go down immediately and place it with the bonding company. This check was dated April 29, 1910, was for $675, and payable to the order of "Marie Stafford, Administratrix of the Estate of Thomas Stafford." It was indorsed by the administratrix, and subsequently by the respondent. In July, 1910, the administratrix went to the surety company, and then for the first time learned that the respondent had not deposited the checks with it. Shortly after this the respondent wrote her a letter, stating that he would go down on Thursday or Friday and pay the money to the surety company, and then follows a series of letters, written by the respondent to his client, promising to repay the money to her.

The respondent admitted that he owed the administratrix $1,690, that he had received the money coming to the estate on these checks, and that he had appropriated them to his own use, and has never repaid it. The respondent was then called on his own behalf, and said that the complainant employed him in June, 1908, as attorney for the estate. He tries to make out a case of rendering professional services in two estates of which the complainant was administratrix, but it is quite evident from the testimony that the services he rendered were unimportant. There was no litigation, and the estates were comparatively small. He testified that he asked the administratrix to allow him to use the money represented by these two checks,

and that on that statement she indorsed the checks and delivered them to him. The total amount of the estates for which this money was received was about $2,000.

The referee has found that the respondent agreed to deposit this money with the surety company, and obtained her indorsement for that purpose, that he violated his agreement, collected the money, used it for his own purposes, and has never repaid it. The checks were to the order of the estate. Until the estate was settled the administratrix had no authority to use the money, except in settlement of the affairs of the estate, and it would have been a violation of the administratrix's duty to have loaned this money to the respondent, or for the respondent to have used it, even with her consent; but the referee has found that the testimony of the respondent as to the circumstances under which he received these checks was false, that the respondent received the checks for the purpose of delivering them to the surety company, and in violation of that promise, and his obligation to his client and to the surety company, he collected the money and appropriated it to his own use, and after an examination of the testimony we agree with the referee.

But one result can follow, and that is that the respondent should be disbarred; and it is so ordered. All concur.

---

CASCADE HOTEL CO. v. ORLEANS REAL ESTATE CO.

(Supreme Court, Appellate Division, First Department. November 8, 1912.)

1. JUDGMENT (§ 109*)—DEFAULT.

Plaintiff's counsel answered "Ready" on the day for trial, and defendant's counsel presented an insufficient affidavit for adjournment, which was denied, and the court directed a jury to be impaneled, when defendant's counsel stated that he "refused to go on with the case," and left the courtroom, but returned and stated that he had an undefended divorce case at Special Term, whereupon, on request of the trial judge, the Special Term justice agreed to hold the divorce case until trial of the present action, when the judge directed the defendant's counsel to examine the jury, whereupon he stated that he would take no part in such examination and left the courtroom. *Held*, that defendant had suffered a deliberate default.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 160, 162, 179; Dec. Dig. § 109.*]

2. JUDGMENT (§ 163*)—DEFAULT—VACATING.

Where the moving papers show no satisfactory reason why defendant should be relieved from a default judgment, it is an abuse of discretion to set it aside.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 323; Dec. Dig. § 163.*]

Appeal from Special Term, New York County.

Action by the Cascade Hotel Company against the Orleans Real Estate Company. From an order vacating a default judgment for plaintiff, it appeals. Reversed, motion to vacate denied, and judgment reinstated.

See, also, 135 N. Y. Supp. 1103.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.